1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11   MAXINE SHOOK EGHTESADI,           )   Case No. 3:12-cv-1978-GPC-JMA
                                       )
12              Plaintiff,             )   **ORDER GRANTING**
                                       )   **DEFENDANT WELLS FARGO**
13   v.                                )   **BANK, N.A.'S MOTION TO**
                                       )   **DISMISS**
     WELLS FARGO BANK, N.A. et al.,    )
14                                     )
              Defendants.              )   **(ECF NO. 4)**
15   _____  )

16

17        Plaintiff, through counsel, commenced this action in the San Diego Superior

18   Court, asserting various claims related to the origination and modification of a re-

19   finance loan secured by a deed of trust on Plaintiff's home.   (ECF No. 1-1.)

20   Defendants thereafter removed the action to federal court, asserting diversity

21   jurisdiction. (ECF No. 1.) Currently before the Court is defendant Wells Fargo Bank,

22   N.A.'s motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil

23   Procedure 12(b)(6).[1]  (ECF No. 4.)  Wells Fargo's motion to dismiss has been fully

24   briefed.[2]  (ECF Nos. 7, 8.)  The Court finds Wells Fargo's motion to dismiss suitable

25   _____

26        [1] Wells Fargo Bank, N.A. is sued as successor by merger to Wells Fargo Home Mortgage, Inc.
27   (See ECF No. 4.)

28        [2] Along with its motion to dismiss, Wells Fargo filed a request for judicial notice.  Because the
     Court does not rely on any facts contained therein, however, Wells Fargo's request for judicial notice
     is denied as moot.

for disposition without oral argument.  See CivLR 7.1.d.1.  For the reasons that follow, the Court hereby **GRANTS** Wells Fargo's motion to dismiss in its entirety.  Plaintiff's first, fourth, and fifth causes of action are dismissed without leave to amend, and Plaintiff's second, third, sixth, seventh, and eighth causes of action are dismissed with leave to amend.

## BACKGROUND

Plaintiff alleges that, in 2003, she purchased certain real property that is commonly known as: 1301 Verbena Court, Carlsbad, CA 92011 ("Property" or "Subject Property").  Plaintiff alleges she was having financial difficulties in May 2009 and that, around the same time, she received solicitations from Wells Fargo regarding various mortgage assistance options.  Plaintiff alleges she  thereafter visited a Wells Fargo branch to discuss those options.

Plaintiff claims that, after discussing her financial situation with a Wells Fargo representative named Jon Tucker ("Tucker"), she "highlighted the fact that her current loan was set to increase in principal in [sic] interest payments in the next few years and that she would not be able to afford it."  Plaintiff alleges she therefore "inquired into the availability of a modified loan as advertised in the solicitations she had received."

Plaintiff alleges that "Tucker represented to Plaintiff that a re-finance of her then existing loan would be the best option available to her."  Plaintiff alleges, however, that "after a brief consultation, it appeared to [her] that a re-finance was not an option to her as Tucker represented that she may want to consider a loan modification instead and that he knew someone that could assist her."  Plaintiff claims that, before she left the meeting, Tucker left the office for a short period and, upon returning, "represented to Plaintiff that 'she qualified for a re-finance and that the process was close to completion.'"  Plaintiff alleges that, in response to her request for clarification, she "was informed to 'not question the man behind the curtain.'"  Plaintiff claims she therefore "unsure if she was being offered a re-finance or a modification and was left in the dark as to what had resulted in her suddenly being approved."

Plaintiff alleges "she later learned that she had been placed in a 4.95% 30 year fixed interest loan," but that Wells Fargo never explained the terms of that loan to her and that, indeed, she did not "even know she was being put in a re-finance transaction until the date the loan was set to close." Plaintiff alleges that, in an effort to close the re-finance transaction and obtain the commission and fees associated with closing the loan, Tucker falsified Plaintiff's income. Plaintiff asserts the "re-finance on the Subject Property was completed in June 2009, secured by a Deed of Trust in the amount of $354,500."

Plaintiff asserts she "was intentionally placed into a non-affordable loan designed for her to fail," as "it was the intent of Wells Fargo to steal the subject property through an inevitable foreclosure." Plaintiff alleges she had no time to review the loan documents, as they were not given to her until the day the loan was set to close. Plaintiff thus claims that she "did not realize the deception with the loan application until it was too late." Plaintiff asserts she was forced into the re-finance transaction, that she received no benefit from the re-finance transaction, and that her monthly principal and interest payment actually increased from $2,695 to $2,753 per month.

Plaintiff alleges her financial situation worsened up through 2011 and that, in October 2011, Plaintiff had to choose between fixing her car and paying her mortgage. Plaintiff alleges "[s]he was left with no choice but to choose to fix her car so she could continue to work." Plaintiff asserts that, as a result of her financial hardship, she contacted Wells Fargo's mortgage modification department.

Plaintiff claims that, in June 2011, she spoke with a Wells Fargo representative named Alex who "directed Plaintiff to the 'Loss Mitigation Department' for further information regarding a modification of her loan." Plaintiff alleges that, "[u]pon reaching the Loss Mitigation department, Plaintiff was informed that she was 'pre-qualified' for a Fannie Mae Modification, and was asked to submit the following: (1) Financial Worksheet; (2) Hardship Letter; (3) 2 Paystubs as proof of income; (4) Bank

statements showing deposit of spousal support as income."   Plaintiff alleges she thereafter faxed the requested documentation to the number provided by the Loss Mitigation Department.   Plaintiff claims she was "notified that as long as the documentation was being gathered and reviewed, the Subject Property would not proceed to foreclosure."

Plaintiff alleges that, on June 20, 2011, she received a letter from Wells Fargo "requesting that 'required items be sent to Wells Fargo Home Mortgage'" – despite the fact that Plaintiff had done so three days prior.

Plaintiff claims that, also on June 20, 2011, she "received a letter from a Lakeysha Mayo ('Mayo'), a representative of [Wells Fargo], who introduced herself as part of a 'special team' assigned to Plaintiff for mortgage payment assistance." Plaintiff claims Mayo requested the same documentation Plaintiff had already faxed to Wells Fargo to determine Plaintiff's eligibility for payment assistance.   Plaintiff alleges Mayo promised Plaintiff's loan would not be referred to foreclosure while Plaintiff's eligibility for payment assistance was being assessed.   Plaintiff alleges that, "[f]rom this point forward, [Wells Fargo], through its representative Mayo, repeatedly asked for the same documentation over and over again in an effort to deceive Plaintiff into believing she would be offered a modification on her loan."

Plaintiff alleges the following sequence of events occurred:

- June 20, 2011 – Plaintiff faxes all documents and income verification requested by Mayo and Wells Fargo.
- August 9, 2011 – Plaintiff resubmits the same application with updated financials.
- August 26, 2011 – Plaintiff resubmits the same application with updated financials.
- November 13, 2011 – Plaintiff receives a letter from Wells Fargo stating "more documents needed to determine eligibility."
- November 13, 2011 – Plaintiff receives a letter from Mayo asking for a

"Request for Modification and Affidavit" ("RMA").

- November 20, 2011 – Mayo tells Plaintiff on the phone that Plaintiff's documents "went stale," assuring Plaintiff there would be no foreclosure while the review proceeded.  Mayo requests updated documents and represents there would be a decision within 60 days.
- November 30, 2011 – Plaintiff leaves a message with Mayo to check the status of submitted materials.
- December 5, 2011 – Mayo informs Plaintiff she must submit another RMA, a current hardship letter, and a current financial worksheet.  Mayo informs Plaintiff it will take approximately two weeks to get a response.
- December 27, 2011 – Plaintiff calls Mayo to follow up on the status of her modification request and is told that "her loan modification has reached review by the Underwriters" and that Plaintiff would have to submit her most recent pay stubs and bank statements.  Plaintiff immediately supplies the requested documentation via fax.
- February 3, 2012 – Plaintiff calls Mayo to follow up on the status of her modification request.
- February 6, 2012 – Plaintiff calls Mayo to follow up on the status of her modification request.
- February 27, 2012 – Plaintiff receives a letter from Wells Fargo stating, "investor has declined the request to modify your mortgage."

Plaintiff asserts she was "repeatedly assured that a decision was forthcoming," and that, "[i]n reliance on [Wells Fargo's] representations that the review was being conducted in good faith," she "forewent other alternatives to foreclosure such as listing the property for sale, entertaining short-sale offers procured by her broker, as well as seeking bankruptcy relief."

Plaintiff alleges that, even after being notified that her modification request had been denied, Wells Fargo sent Plaintiff three letters stating Plaintiff qualified for a

review of the same modification that had already been denied.  Plaintiff thus alleges that Wells Fargo never intended to review, nor did they review, Plaintiff's modification request.  Plaintiff claims that, as early as August 2011, Wells Fargo had numerous opportunities to inform Plaintiff her modification request would be denied per a decision by the "investor."  Plaintiff asserts that, instead, Wells Fargo "continued to make misrepresentations that the modification review was pending and close to completion, giving Plaintiff false hope" of avoiding foreclosure.  Plaintiff alleges that, had she known sooner that her request would be denied, "she could have pursued other options to avoid foreclosure such as a re-finance, sale of the property, or other available remedies."

Plaintiff asserts that, on March 1, 2012, Wells Fargo recorded a "Notice of Default and Election to Sell under Deed of Trust" ("NOD").  Plaintiff claims the NOD did not include a "Declaration of Compliance."  Plaintiff also claims she was never contacted by anyone from Wells Fargo to discuss options to avoid foreclosure.  Plaintiff asserts that, on June 22, 2012, she received an un-dated and un-signed "Notice of Trustee's Sale" ("NOTS"), setting a trustee's sale for July 12, 2012.

Plaintiff thereafter commenced this action on July 9, 2012, asserting eight causes of action for (1) declaratory relief; (2) fraud; (3) negligent misrepresentation; (4) wrongful foreclosure; (5) violation of California Civil Code section 2924 et seq.; (6) promissory estoppel; (7) negligence; and (8) violation of California Business and Professions Code section 17200.

## DISCUSSION

### I.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes

a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Generally, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

## II.   Analysis

Plaintiff concedes that her fourth and fifth causes of action for violations of

California Civil Code sections 2923.5 and 2924 et seq. should be dismissed. Accordingly, Wells Fargo's motion to dismiss is granted as to those causes of action without leave to amend. The Court will thus only address Plaintiff's first through third, and sixth through eighth, causes of action. Before the Court reaches those claims, however, the Court first addresses whether Plaintiff's claims are barred by her failure to allege the ability to tender the entire balance due on the underlying loan.

### A.    Tender

Wells Fargo argues Plaintiff has inadequately pled the ability to tender the entire amount due on the underlying loan: $364,745.76. Wells Fargo thus asserts that each of Plaintiff's claims fails because they are all related to the process of foreclosing on the Property. In opposition, Plaintiff argues she is not required to allege the ability to tender because that would be an affirmation of the validity of the underlying loan, which she alleges is an invalid debt.

A defaulted borrower who seeks to set aside a trustee's sale is required to do equity before a court may disturb the trustee's sale. Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 112 (2011). Before a borrower may proceed with an action to set aside a trustee's sale because of irregularities in the sale notice or procedure, the borrower must pay or plausibly allege the ability to pay the entire underlying debt. Id. The tender requirement may also apply to any cause of action that is "implicitly integrated" with an irregular trustee's sale. Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 579 (1984).

There are, however, exceptions to the tender requirement. Lona, 202 Cal. App. 4th at 112. Those exceptions apply where (1) the borrower's action attacks the validity of the underlying debt; (2) the person challenging the trustee's sale has a counterclaim or set-off against the beneficiary, such that the tender and the counterclaim offset one another; (3) it would be inequitable to impose such a condition on the party challenging the sale; (4) the trustor is not required to rely on equity to attack the deed of trust because the deed is void on its face. Id. at 112-13.

Here, each of Plaintiff's remaining causes of action relates to the origination of the underlying loan and/or the modification process that Plaintiff alleges she engaged in from June 2011 through February 2012.  Plaintiff's first cause of action for declaratory relief seeks a declaration of the parties' rights and duties as to (1) whether the underlying loan "was intentionally created to cause Plaintiff lose her property" and, (2) whether Wells Fargo "deceptively drug out the loan modification as part of the overall scheme to obtain the Subject Property through foreclosure ot generate excess profits for Wells Fargo."[3]  Plaintiff states that "[s]uch a judicial determination is necessary to prevent the future unlawful foreclosure sale of the Subject Property."  Thus, while Plaintiff may ultimately desire to halt the trustee's sale, Plaintiff's first cause of action does not directly attack the trustee's sale because of irregularities in the sale or notice procedure.  It instead focuses on the origination of the underlying loan and on the modification process.  That is, it is not "implicitly integrated" with an irregular trustee's sale.  Accordingly, the tender requirement does not apply to Plaintiff's first cause of action as currently pled.

Similarly, Plaintiff's second and third causes of action for intentional and negligent misrepresentation relate to the loan origination and modification processes.  Thus, neither are those causes of action subject to the tender requirement as currently pled.

Plaintiff's sixth and seventh causes of action for promissory estoppel and negligence relate exclusively to the alleged promises that Wells Fargo made to Plaintiff in connection with the loan modification process.  Thus, Plaintiff's sixth and seventh causes of action, as currently pled, are not subject to the tender requirement either.

Plaintiff's eighth cause of action for unfair competition relates to the loan

---

[3] Plaintiff also claims an actual controversy exists concerning Wells Fargo alleged failure to comply with the statutory requirements applicable to the trustee's sale  as set forth in Plaintiff's fourth and fifth causes of action.  Because Plaintiff concedes her fourth and fifth causes of action should be dismissed, however, the Court does not consider the facts alleged thereunder for purposes of determining whether Plaintiff's first cause of action is subject to the tender requirement.

origination process, which Plaintiff asserts was fraudulent, unfair, and unlawful.[4]  Thus, because Plaintiff is not attacking the trustee's sale for irregularities in the notice or sale procedure, Plaintiff's eighth cause of action is not subject to the tender requirement as currently pled..

In sum, none of Plaintiff's remaining causes of action are subject to the tender requirement as currently pled.  The Court will thus determine whether Plaintiff has sufficiently stated her remaining claims.

**B.      Declaratory Relief**

Wells Fargo moves to dismiss Plaintiff's claim for declaratory relief, arguing Plaintiff cannot establish the existence of an actual and present controversy and that, in any event, the relief requested is duplicative of Plaintiff's other causes of action.  In response, Plaintiff argues that, even though Plaintiff's request for declaratory relief refers to past actions, there exists an actual controversy in that Wells Fargo still claims an interest in the Property and continues to seek collection of Plaintiff's mortgage payments.  Plaintiff thus asserts there is an actual and present controversy that will affect the parties' prospective rights.

The Declaratory Judgment Act ("DJA") provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  "A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases 'brought by any interested party' involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not

---

[4] Some of the alleged acts of fraudulent, unfair, and/or unlawful conduct described under Plaintiff's eighth cause of action are the same foreclosure related acts described under Plaintiff's fourth and fifth causes of action.  Because Plaintiff has conceded to the dismissal of her fourth and fifth causes of action, however, the Court considers only Plaintiff's allegations regarding the loan origination process for purposes of determining whether the tender requirement applies to Plaintiff's eighth cause of action.

yet done so." <u>Seattle Audubon Soc. v. Moseley</u>, 80 F.3d 1401, 1405 (9th Cir. 1996).

The DJA's operation "is procedural only" in that it provides a remedy and defines procedure in relation to cases and controversies in the constitutional sense. <u>See</u> <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240 (1937). Thus, a "claim" for declaratory relief does not by itself state a claim. <u>Audette v. Int'l Longshoremen's &</u> <u>Warehousemen's Union</u>, 195 F.3d 1107, 1111 n.2 (9th Cir. 1999); <u>Realty Experts Inc.</u> <u>v. RE Realty Experts, Inc.</u>, 2012 WL 699512, at *2 (S.D. Cal. Mar. 1, 2012). As such, Plaintiff's cause of action for declaratory relief does not state a claim. Accordingly, Wells Fargo's motion to dismiss Plaintiff's cause of action for declaratory relief is granted without leave to amend.

## C.    Intentional & Negligent Misrepresentation

### 1.    Statute of Limitations

Wells Fargo argues Plaintiff's claims for intentional and negligent misrepresentation must be dismissed because they are time barred.

In response, Plaintiff argues her misrepresentation claims are not time barred because the delayed discovery rule tolled the applicable statute of limitations up until the time she filed her complaint. Plaintiff claims she was ignorant of her right to sue through no fault of her own.

California Code of Civil Procedure section 338(d) provides that an action for relief on the ground of fraud or mistake must be commenced within three years from the time the aggrieved party discovers the facts constituting the fraud or mistake. "In general, a plaintiff's ignorance of a cause of action does not toll the running of the statute." <u>Hogar Dulce Hogar v. Cmty. Dev. Comm'n of City of Escondido</u>, 110 Cal. App. 4th 1288, 1297 (2003). An exception to the general rule is the delayed discovery rule, which tolls the statute of limitations until the date the plaintiff knew or should have known the factual basis of its fraud claim. <u>Id.</u>

"Delayed discovery has been adopted to protect plaintiffs who are ignorant of

their right of action through no fault of their own." Id.; see also Bernson v. Browning-Ferris Indus., 7 Cal. 4th 926, 931-32 (1994) ("It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.")

In the context of fraud in the execution of contracts, "it is not reasonable to fail to read a contract." Brown v. Wells Fargo Bank, NA, 169 Cal. App. 4th 938, 959 (2008) (emphasis in original). "[T]his is true even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract." Id. "Reasonable diligence requires a party to read a contract before signing it." Id. (citing Brookwood v. Bank of America, 45 Cal. App. 4th 1667, 1674 (1996)).

The Court first notes that Plaintiff does not dispute that California Code of Civil Procedure section 338(d) applies to her misrepresentation claims. Plaintiff only asserts the statute of limitations should be tolled because she was ignorant of her right to sue through no fault of her own. Indeed, Plaintiff alleges generally that "[a]ny applicable statutes of limitations have been tolled by the Defendant's continuing, knowing, and active concealment of the facts alleged herein."

With regard to the loan origination process, the Court finds Plaintiff has failed to adequately allege she engaged in the reasonable diligence required for tolling to apply. Plaintiff alleges Wells Fargo intentionally omitted material terms of the loan (including that it was a re-finance loan), intentionally omitted the fact that it offered incentives to Tucker to "sell" Plaintiff a high-interest loan, and intentionally misrepresented Plaintiff's income on the re-finance loan application.

Regarding the material terms of the loan, Plaintiff asserts she is an unsophisticated borrower, that she relied on Wells Fargo's expertise, and that she was rushed through the loan origination process. No where, however, does Plaintiff allege

that she even read the loan documents.  Indeed, while Plaintiff claims she did not know she was re-financing her loan until closing, Plaintiff does not allege that she, for example, attempted to cancel or delay the closing so she could at least read the loan documents.  Instead, Plaintiff alleges she went through with the closing to obtain the re-finance loan.

With regard to the incentives Wells Fargo allegedly offered Tucker to ratchet up the interest on Plaintiff's loan, Plaintiff does not allege any diligence with regard to discovering how much Tucker was paid in connection Plaintiff acquiring a re-finance loan if such information was as important to Plaintiff as she now seems to claim.

As to Plaintiff's allegedly misreported income, Plaintiff alleges she signed the loan application knowing her income was misreported.  Thus, not only did Plaintiff know of that fact at the time she executed the re-finance loan documents, but she failed to exercise any diligence.  Indeed, Plaintiff's admittedly unclean hands bar any fraud claim based on the misreporting of her income.  See Peregrine Funding, Inc. v. Sheppard Mulin Richter & Hampton LLP, 133 Cal. App. 4th 658, 681 (2005).

In sum, the Court finds Plaintiff has failed to adequately allege that Wells Fargo concealed the facts underlying her misrepresentation claims in a way that prevented Plaintiff from discovering them through reasonable diligence.  Plaintiff has failed to adequately allege that she was reasonably diligent in connection with the loan origination process, which precludes application of tolling.  As such, Plaintiff's second and third causes of action are dismissed to the extent they are based on omissions or misrepresentations made in connection with the loan origination process.

Plaintiff's second and third causes of action, however, are also based partly on the loan modification process.  Plaintiff alleges Wells Fargo intentionally and negligently misrepresented that Plaintiff qualified for a modification review and that Wells Fargo would review Plaintiff's loan modification application.  Because Plaintiff alleges the loan modification process began in 2011, and because Plaintiff filed suit in

2012, Plaintiff's second and third causes of action are not time barred to the extent they are based on misrepresentations made in connection with the loan modification process.   As such, the Court goes on to address the sufficiency of Plaintiff's misrepresentation claims as they relate to the loan modification process.

### 2.      Sufficiency of Claims

Wells Fargo argues Plaintiff cannot allege that Wells Fargo made any misrepresentation – much less so with the degree of specificity required under Federal Rule of Civil Procedure 9(b).  Wells Fargo asserts the only promise Plaintiff alleges that Wells Fargo made was a promise to review Plaintiff's loan modification application.  Wells Fargo asserts that Plaintiff's allegations demonstrate that Wells Fargo did indeed review Plaintiff's loan modification application over several months, ultimately sending her a denial letter in February 2012.  Wells Fargo further argues Plaintiff's claim for negligent misrepresentation must be dismissed because lenders do not generally owe borrowers any legal duty.  Wells Fargo lastly argues that Plaintiff's tort claims should be dismissed in favor of contractual claims given the contractual relationship between the parties.

In response, Plaintiff argues she has satisfied Rule 9's heightened pleading requirement in stating her misrepresentation claims.  Plaintiff asserts Wells Fargo's arguments misstate Plaintiff's allegations.    Plaintiff asserts the crux of her misrepresentation claims is that "she was subject to fraud and/or negligent misrepresentations beginning with the origination of her loan and continuing throughout the servicing of her loan with Wells Fargo's deceptive loan modification practices."    Plaintiff asserts Wells Fargo "never intended to offer Plaintiff a modification of her loan, and that it was their intention to give Plaintiff [a] false sense of hope that a modification was forthcoming and to prevent her from seeking other available remedies to avoid the foreclosure of the Subject Property."  Plaintiff claims "there never was a review being conducted and the ultimate intention of Defendant was

to foreclose on the Subject Property."  Regarding the duty owed, Plaintiff argues Wells Fargo stepped beyond the role of a traditional lender and therefore owed Plaintiff a duty of care.

"The well-established common law elements of fraud which give rise to the tort action for deceit are: (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. . . .  It is essential . . . that the person complaining of fraud actually have relied on the alleged fraud, and suffered damages as a result."  <u>Bower v. AT & T Mobility, LLC</u>, 196 Cal. App. 4th 1545, 1557 (2011).  Further, Rule 9 provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Negligent misrepresentation shares all the elements of fraud except for the element regarding mental state.   In lieu of knowledge of falsity, negligent misrepresentation requires that the defendant "lacked any reasonable ground for believing [its] statement to be true."  <u>Charnay v. Cobert</u>, 145 Cal. App. 4th 170, 184 (2006).  With regard to application of Rule 9 to negligent misrepresentation claims, however, "the tide of precedent is turning."  <u>Petersen v. Allstate Indem. Co.</u>, 281 F.R.D. 413, 418 (C.D. Cal. 2012).  Recent decisions by the Fifth, Seventh, and Ninth Circuits hold that negligent misrepresentation claims are not subject to Rule 9's heightened pleading requirement.  <u>Id.</u> (citing <u>Tricontinental Indus. v. Pricewaterhouse Coopers, LLP</u>, 475 F.3d 824, 833 (7th Cir. 2007); <u>GE Capital Corp. v. Posey</u>, 415 F.3d 391, 394 & n.2 (5th Cir. 2005); <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1105-06 (9th Cir. 2003)).

The Court finds Plaintiff has failed to sufficiently allege either intentional or negligent misrepresentation.  Plaintiff claims her misrepresentation claims are based on an alleged scheme to convince borrowers to acquire home loans they cannot afford

with the hope that borrowers will default on the loans so that Wells Fargo can ultimately foreclose on the property.  Plaintiff's second and third causes of action, however, provide specific representations and/or omissions as discussed above, e.g., failure to disclose loan terms, Tucker's compensation, misreporting Plaintiff's income, promise to review request for loan modification.  Thus, as currently pled, the basis for Plaintiff's misrepresentation claims is unclear.  As such, the Court cannot determine whether Plaintiff has adequately alleged an actual misrepresentation or omission of a material fact or that Wells Fargo had the requisite mental state.  Further, Plaintiff has failed to adequately allege that any reliance on Wells Fargo's misrepresentations and/or omissions was reasonable – especially in light of the fact that Plaintiff has failed to allege reasonable diligence in connection with the loan origination process as discussed above.

In sum, Plaintiff's allegations are vague, conclusory, confusing, and – with regard to Plaintiff's fraud claim – do not satisfy Rule 9.[5]  Accordingly, Wells Fargo's motion to dismiss Plaintiff's second and third causes of action for intentional and negligent misrepresentation is granted with leave to amend.

### D.    Promissory Estoppel

Wells Fargo argues Plaintiff's promissory estoppel claim fails because Plaintiff "has not, and cannot, plead a cognizable promise."  Wells Fargo asserts that Plaintiff alleges she was promised only that Wells Fargo would review her loan modification application and that Wells Fargo did actually review Plaintiff's loan modification application.  Wells Fargo further argues that Plaintiff "cannot avoid that she has not reasonably relied to her detriment."  (Emphasis in original.)

In response, Plaintiff argues she has alleged that Wells Fargo "promis[ed] that she was qualified for and would be receiving a Fannie Mae modification, and that the

---

[5] The Court moreover notes that Plaintiff did not respond to Wells Fargo's argument that Plaintiff's tort claims should be dismissed given the contractual relationship between the parties.

process was actually ongoing during the nine month period that she spent repeatedly submitting documents."

"In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach may be limited as justice requires.'" Toscano v. Greene Music, 124 Cal. App. 4th 685, 692 (2004).

Here, the Court finds Plaintiff has failed to adequately allege a claim for promissory estoppel.  Despite Plaintiff's assertion that she alleged that Wells Fargo made a promise that "she was qualified for and would be receiving a Fannie Mae modification," Plaintiff's complaint alleges no such promise.  Indeed, Plaintiff's promissory estoppel claim refers the reader to paragraph 43 of the complaint for a list of Wells Fargo's alleged promises, but paragraph 43 contains only the alleged time line of the modification process, which the Court has set forth under the Background section above.

At most, Plaintiff alleges Wells Fargo promised "to conduct a good faith review of Plaintiff's loan" and that Wells Fargo's promise induced Plaintiff to forego all other options to avoid foreclosure.  As currently pled, however, Plaintiff's complaint alleges that Wells Fargo did ultimately deny her request for a loan modification, which implies that Wells Fargo did review her modification request.  Moreover, Plaintiff's allegations do not demonstrate that it was reasonable for her to forgo other options to avoid foreclosure based on a promise to merely review her loan modification request. Accordingly, Wells Fargo's motion to dismiss Plaintiff's sixth cause of action for promissory estoppel is granted with leave to amend.

**E.    Negligence**

Wells Fargo argues Plaintiff's negligence claim fails because Plaintiff, as a

borrower, cannot allege Wells Fargo, as a lender, owed Plaintiff any legal duty.

Plaintiff argues Wells Fargo does owe a legal duty to Plaintiff because Wells Fargo stepped out of the traditional role of a lender when it offered Plaintiff an opportunity to seek a loan modification.

"The elements of a cause of action for negligence are well established.  They are (a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury."  Ladd v. Cnty. of San Mateo, 12 Cal. 4th 913, 917 (1996) (internal quotation omitted).

With regard to a legal duty, "California courts have stated that 'a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'"  Ottolini v. Bank of America, 2011 WL 3652501, at *5 (N.D. Cal. Aug. 19, 2011) (citing Nymark v. Heart Fed. Savs. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991)).  Several courts have determined that a lender that offers a borrower an opportunity to seek a loan modification does not exceed the scope of a lender's conventional role and therefore does not owe a legal duty to the borrower in connection with the opportunity to seek a loan modification.  See, e.g., Sullivan v. JP Morgan Chase Bank, NA, 725 F. Supp. 2d 1087, 1094 (E.D. Cal. 2010) (finding allegations that a lender misrepresented that a loan modification would be made insufficient to form basis of negligence claim); Karimi v. Wells Fargo, 2011 U.S. Dist. LEXIS 47902, at *7 (C.D. Cal. May 4, 2011) (finding loan modification to be "intimately tied" to bank's lending role); Ottolini, 2011 WL 3652501, at *7.  The Court finds the reasoning of these cases persuasive.[6]

---

[6] Plaintiff cites Ansanelli v. JP Morgan Chase Bank, NA, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) in support of her position that Wells Fargo owed her a legal duty when it offered to review her loan modification request.  Ansanelli is, however, distinguishable because, there, the borrower alleged that the lender actually agreed to engage the borrower on a trial loan modification plan. Moreover, the court in Ansanelli provided no support for its conclusion that activity related to a loan modification went beyond the domain of a usual money lender.

Here, Plaintiff alleges Wells Fargo "had a duty to exercise reasonable care and skill in giving Plaintiff advice about how she could receive assistance with her loan and properly carrying out the loan modification process."  Thus, Plaintiff has failed to allege that Wells Fargo was acting outside the scope of a lender's conventional role.  As such, Plaintiff has failed to adequately allege that Wells Fargo owed her any legal duty.  Accordingly, Wells Fargo's motion to dismiss Plaintiff's seventh cause of action for negligence is granted with leave to amend.

**F.    Unfair Competition**

Wells Fargo argues Plaintiff's claim for unfair competition fails because Plaintiff has failed to "allege with the requisite particularity that Defendant violated any law, or committed any unfair or deceptive business practices."  Wells Fargo further asserts that Plaintiff lacks standing to assert an unfair competition claim.

In response, Plaintiff argues her complaint sufficiently states an unfair competition claim.  Plaintiff argues her complaint is "chalk [sic] full of allegations that would lead reasonable members of the public 'likely to be deceived' [sic] thus fulfilling the 'fraudulent' prong of § 17200, it is also full of allegations of wrongdoing carried out by Defendant, which harmed Plaintiff while conferring absolutely no benefit and thus fulfilling the 'unfair' prong of this Code."  Plaintiff then goes on to state that her allegations concerning Wells Fargo's alleged scheme of "putting Plaintiff into a re-finance transaction they knew was not appropriate for her and was designed to result in foreclosure" are sufficient to state an unfair competition claim.  Plaintiff lastly argues she has standing to assert an unfair competition claim because she has been damaged by Wells Fargo's allegedly fraudulent and unfair scheme.

California's unfair competition law ("UCL") "does not proscribe specific activities, but broadly prohibits 'any unlawful, unfair or fraudulent business act or practice."  Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal. App. 4th 638, 643-44 (2008).  Unlawful business practices are those that constitute violations of other laws,

such that the UCL "borrows" such violations to establish liability under the UCL.  Id. The California Supreme Court has defined unfair business practices to mean "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.  Id. at 646 (citing Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999).  Fraudulent business practices are those that are likely to deceive reasonable members of the public.  Puentes, 160 Cal. App. 4th at 645.

While Plaintiff asserts her complaint is replete with instances of Wells Fargo's unlawful, unfair and fraudulent conduct, the Court disagrees.  As set above in discussing the adequacy of Plaintiff's remaining causes of action, Plaintiff has failed to adequately allege any unlawful conduct that would serve as a predicate violation for liability under the UCL.  Plaintiff does not allege unfair conduct as defined by the California Supreme Court in Cel-Tech, as Plaintiff does not allege any  violation of anti-trust laws or other laws related to the preservation of competition. Lastly, Plaintiff does not adequately allege any fraudulent conduct.  While Plaintiff asserts that Wells Fargo engaged in a scheme to induce her into acquiring a loan that would lead to foreclosure, Plaintiff has failed to plausibly allege such a scheme as discussed above. Accordingly, Wells Fargo's motion to dismiss Plaintiff's eighth cause of action for unfair competition is granted with leave to amend.

## CONCLUSION

For the foregoing reasons, Wells Fargo's motion to dismiss is **GRANTED** in its entirety.  Plaintiff is denied leave to amend her first, fourth, and fifth causes of action. Plaintiff is granted leave to amend her second, third, sixth, seventh, and eighth causes of action.  Plaintiff shall have until **April 26, 2013**, to file an amended complaint.  The

/ / /

/ / /

1   hearing on Wells Fargo's motion to dismiss, currently set for April 12, 2013, is

2   **VACATED**.

3          **SO ORDERED**.

4   DATED:  April 11, 2013

5

6   _____
    HON. GONZALO P. CURIEL
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28